JOHN B. FRINK

*v.*

PRATT & CO.

*Filed at Springfield October 31, 1889.*

1. LANDLORD'S LIEN—*upon crops—character of the lien.* The lien given by statute to a landlord on the crops for the rent of the premises does not invest him with the title thereto, either general or special. For any injury to the crops grown or growing, the right of action is in the tenant alone. The legal title remains in the tenant, simply charged with the lien of the landlord, and such lien is in some respects analogous to the lien given by law to officers under executions. Without a levy or taking possession of the crops, the landlord, though invested with a lien, has no such title to the same as will enable him to maintain trover for their conversion.

2. The landlord's interest in the crops raised by his tenant, who is to pay a cash rent, is that of a mere security for the payment of the rent. It differs from the security of a chattel mortgage, in which the legal title passes to the mortgagee. In case of a chattel mortgage, trover or replevin lies on breach of its condition.

3. SAME—*as to the crops of a different year—from that for which the rent is due.* A landlord's lien on the crops of a given year is confined to the rents due for that year. He will have no lien on such crops for unpaid rent of a prior year.

4. TROVER—*when the action will lie—essentials to support the action.* In trover, the plaintiff must recover on the strength of his own title, without regard to the weakness of that of his adversary. It is a possessory action, and in order to maintain it, the plaintiff must show in himself either a general or a special property in the thing alleged to have been converted. It is essential that the plaintiff, at the time of the conversion, should have not only the right of property in the chattel, but also the right to the immediate possession.

5. The plaintiff, in order to recover, must show a legal title. His right to possession must be immediate, absolute and unconditional, and not dependent on some act to be done by him. It is not enough that he has a mere right of action, or a right to take possession at some future day.

6. SAME—*by landlord—to recover crops from purchaser of tenant.* Where a landlord has not invested himself with the right to the possession of his tenant's crops by the issue and levy of a distress warrant, or taken other measures to give him a right to the immediate possession, he can not maintain trover against a purchaser of the crops from the tenant, whether such purchaser took with or without notice of the landlord's lien, but must pursue the appropriate remedy given him by law.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Macon county; the Hon. C. B. SMITH, Judge, presiding.

By written lease, March 11, 1884, Daniel Wampler became the tenant of appellant for three years, at a yearly rental of $500 and taxes assessed upon the premises rented. The rent, by the terms of the contract, fell due on the first day of January each year. Wampler occupied the farm rented, and raised crops thereon in the years 1884 and 1885. He paid about $351 of the first year's rental, and the taxes for that year, but

he paid nothing on the rent of 1885, falling due January 1, 1886, nor the taxes of 1885. On the 11th day of December, 1885, Wampler sold all the corn raised on the demised premises that year to one Twaddell, agent of appellees at Lake City, in Moultrie county. The sale was of 2498 bushels of corn, at twenty-three cents per bushel. The purchase was made December 11, 1885, but the corn was not paid for until January 1, 1886, and was accepted by the agent of appellees in cribs situated on the farm where raised. About two weeks afterward Twaddell shelled the corn at the cribs, had it hauled and loaded in the cars at Lake City, and shipped to appellees at Decatur, who, previous to its arrival at Decatur, had sold the same to parties in the east, and it was forwarded to them. Appellant brought trover against appellees to recover damages for the conversion of the grain, to the extent of the rent due and unpaid by the tenant. It was contended by appellant, that appellees, through their agent, Twaddell, had notice that Wampler was appellant's tenant, or had notice of such facts and circumstances as was sufficient to put them on inquiry, and therefore were not purchasers without notice of appellant's rights. This was denied by appellees, and in respect thereof the testimony is conflicting. It was also contended, that whether appellees had notice or not, they were liable for having converted the crops grown on the premises, upon which appellant, as landlord, had a lien for the rent due and unpaid. A jury was waived, and cause tried by the court, by consent. The issues were found for the defendants, and judgment rendered accordingly. The Appellate Court affirmed the judgment, and appellant (plaintiff below) brings the record to this court by his further appeal.

Messrs. BLADES & NEVILLE, for the appellant.

Messrs. OUTTEN & VAIL, for the appellees.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

Appellees were dealers in grain at Decatur, Illinois. Their agent at Lake City purchased of one Wampler, December 11, 1885, 2498 bushels of corn, in cribs on the farm then occupied by Daniel Wampler, to be accepted by Twaddell in the crib, and full payment was made of the price of the corn January 1, 1886. Shortly afterwards the corn was shelled, hauled to Lake City, and shipped to appellees at Decatur, by their agent, and in the regular course of business was forwarded by appellees to their customers in the eastern cities. This is an action of trover, by appellant, against appellees, to recover damages for the wrongful conversion of said corn, he claiming a lien thereon, as landlord of Wampler, for rents due for the farm on which the same was raised, for the years 1884 and 1885.

There is no doubt but Wampler was the tenant of appellant, under a written lease, by which the farm upon which the corn in controversy was raised, was demised to Wampler for three years. The rent, payable the 1st of January of the next year, was $500 in cash and the taxes accruing on the land. At the time of the sale of the corn there was due and unpaid on the rent of 1884 about $149, while upon the rent for 1885, which fell due January 1, 1886, nothing had been paid. It would seem that the corn sold by the tenant to the appellees was the crop raised in 1885, and if that be so, appellant had no lien thereon for the rent of the year 1884 remaining unpaid. (*Prettyman* v. *Unland,* 77 Ill. 206.) However, the first question presented by the record is, whether the action will lie,—that is, was appellant invested with such right of property in, or right to the possession of, the corn alleged to be converted, as would enable him to maintain an action of trover.

In trover the plaintiff must recover on the strength of his own title to the property, without regard to the weakness of that of his adversary. It is a possessory action, and in order to maintain it the plaintiff must show in himself either a gen-

eral or special property in the thing converted. (*Davidson* v. *Waldron*, 31 Ill. 120.) It is essential that the plaintiff, at the time of the conversion, should have not only the right of property in the chattel, but also the right to its immediate possession. (Chitty's Pl. 149; *Bailey* v. *Godfrey et al.* 54 Ill. 509; *Forth* v. *Pursley*, 82 id. 152; *Owens et al.* v. *Weedman*, 82 id. 409; *Bertholf* v. *Quinlan*, 68 id. 297.) The plaintiff must show a legal title. His right to possession must be immediate, absolute and unconditional, and not dependent upon some act to be done by him. (*Owens et al.* v. *Weedman, supra.*) Cooley, in his work on Torts, p. 445, says: "When, therefore, it is said that the plaintiff in trover must have had, at the time of the conversion, the right to the property and also a right of possession, nothing more can be intended than this: that the right of which he complains he has been deprived must have been either a right actually in possession, or a right immediately to take possession. It is not enough that it be merely a right in action, or a right to take possession at some future day."

The statute gives the landlord a lien on "the crops grown or growing upon the demised premises for the rent thereof," etc., but does not invest him with the title thereto, either general or special. For any injury to the crops grown or growing, the right of action is in the tenant alone. The legal title remains in the tenant, charged with the lien of the landlord thereon, until it is divested in some mode known to and recognized by the law. This lien, in respect to the legal rights of the holder, is in some respects analogous to the lien given by law under executions. An execution is a lien upon the personal property of the debtor not exempt, from the time it comes to the officer's hands, and gives the officer the right to seize and sell the same for the satisfaction of the judgment upon which it has issued. But without a levy, or reducing the property of the debtor to possession, the officer, though clothed with a lien, has no such title to the property as will enable

him to maintain trover for its conversion by another. In *Mulheisen et al.* v. *Lane*, 82 Ill. 117, it is held that an officer acquires no such interest in property, prior to his seizure thereof under his execution, as will give him the right to recover the value thereof in an action of trover, or the property itself in replevin, and that until after a levy he has no such right in the property that he can maintain any action in respect thereof, and that the mere right to levy upon the property gives the officer no interest in the property itself. (See, also, *Davidson* v. *Waldron, supra; Powers* v. *Wheeler*, 63 Ill. 29.) In *Watt* v. *Scofield*, 76 Ill. 261, the tenant, before his rent fell due, sold the entire crop to Watt, who was shown to have had notice of the landlord's lien. The landlord sued Watt in trover before issuing a distress warrant. The court, while holding that Watt was· not a *bona fide* purchaser without notice, and therefore liable to the landlord in an appropriate action, held that trover would not lie.

If, then, a sheriff, without a levy of his execution, can not maintain trover for a conversion of the execution debtor's property after his lien has attached, it is difficult to perceive upon what principle a landlord, having a mere lien on his tenant's crop, can maintain an action of trover against a purchaser from his tenant, either with or without notice of the landlord's lien. Until the landlord has issued his warrant he will have no such title or interest in the crop itself as will enable him to maintain trover. Until then he is not even entitled to the possession. The landlord's interest in the property of his tenant who pays a cash rent, is that of a mere security for the payment of the rent. It differs materially from the security of a chattel mortgage. In the case of a chattel mortgage, the legal title passes to the mortgagee as a security for the performance of the conditions of the mortgage, and hence, on a breach of the condition, trover or replevin will lie. But as between landlord and tenant, as we have seen, the latter holds the legal title, subject to be taken away by appropriate pro-

ceedings to enforce the landlord's lien. It is true that this lien is given by the statute, and does not depend upon the issue or levy of the distress warrant for its existence or vitality, and that it may be enforced against or upon the property to which it attaches, so long as the same may be found. Nor do we intend to be understood that the issue and levy of a distress warrant is the exclusive or only remedy for the assertion or protection of the landlord's lien. (*Thompson* v. *Mead et al.* 67 Ill. 395; *Hunter et al.* v. *Whitfield,* 89 id. 231; *Wetsel* v. *Mayers et al.* 91 id. 497.) Thus, if the crop of the tenant be taken on execution or writ of attachment, the landlord's lien upon the crops grown, for the rent of that year, whether due or not, is superior, and will hold the property. *O'Hara* v. *Jones,* 46 Ill. 288; authorities *supra.*

If appellees were not *bona fide* purchasers of the corn, without notice of appellant's lien thereon, or the purchase was made to defeat the landlord's lien by placing the corn beyond the reach of a distress warrant properly issued, an appropriate remedy is provided. *Powers* v. *Wheeler et al.* 63 Ill. 29 ; *Watt* v. *Scofield, supra; Prettyman* v. *Unland, supra.*

All questions of fact controverted between the parties have been settled against the contention of appellant by the judgment of the Appellate Court.

We are of opinion that there was in appellant no right of recovery in this cause, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*