[Civil No. 1165.   Filed June 4, 1912.]

[124 Pac. 654.]

B. FRIEDMAN, Appellant, v. LIZZIE B. MURPHEY, WALTER E. MURPHEY, JOSEPH BROWN and W. P. SIMS, Appellees.

1. APPEAL AND ERROR—REVIEW—LAW OF THE CASE.—A former decision of the supreme court in the same case is the law of the case on all questions raised and decided.

2. BANKRUPTCY — ENFORCEMENT OF LIENS — JURISDICTION OF STATE COURTS.—Where a landlord's lien for rent on his tenant's property was acquired when the term commenced, more than four months before the tenant was adjudicated a bankrupt, the courts of this state had jurisdiction to enforce such lien regardless of the bankruptcy proceedings, the institution of a suit for that purpose constituting a sufficient possession of the property to confer jurisdiction, and hence a plea by a defendant that his purchase of the property from the tenant's assignee was subsequently confirmed by the trustee in bankruptcy by order of the referee was not a defense, where it did not appear that the bankruptcy court ever had possession of the property.

3. LANDLORD AND TENANT—LIEN FOR RENT—ENFORCEMENT—PARTIES. Where, after a tenant assigned his stock of goods and the assignee sold them to a third person, the landlord commenced an action to enforce his lien for rent against the goods, the tenant, no longer having an interest therein, was not a necessary party, and the failure to serve him with process did not require a dismissal of the action.

4. TRIAL—EVIDENCE—PRELIMINARY PROOF.—In an action to enforce a landlord's lien for rent against goods of the tenant which had been sold to a third party who had no actual knowledge of the lease, the admission of the lease for the purpose of proving the term and the amount of rent lienable in the event that notice of the existence of the relation of landlord and tenant should be shown was not error.

5. LANDLORD AND TENANT—LIEN FOR RENT—RIGHTS AND LIABILITIES OF PURCHASERS.—Where a purchaser of a stock of merchandise from an assignee knew that the assignor was a tenant occupying a rented building, but made no inquiry of the landlord as to the terms of the tenancy, he was conclusively presumed to know of the landlord's rights, and could not defend the action to enforce a lien for the rent on the ground that he had no notice of such rights.

6. LANDLORD AND TENANT—ENFORCEMENT OF LIEN FOR RENT—EVIDENCE.—Evidence that a purchaser of goods from a tenant's assignee made inquiry of members of the bar as to the assignee's right to sell them free from liens was inadmissible in an action by the landlord to enforce his lien for rent.

APPEAL from a judgment of the District Court of the First Judicial District, in and for the County of Pima. John H. Campbell, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Frank H. Hereford and Mr. Frank E. Curley, for Appellant.

Mr. S. L. Kingan, for Appellees,

ROSS, J.—This case has been in this court once before. 12 Ariz. 268, 100 Pac. 801. The former decision on all questions raised and decided is the law of the case. We make reference to that case for a general statement of the facts. We will add as we go along any other facts in the present record that may be necessary to explain or elucidate the questions to be decided by us.

1. Appellant, defendant below, complains because the court sustained a demurrer to his plea in abatement. This plea was the same as in the former trial, amplified to meet certain suggestions and criticisms of the court, which suggestions and criticisms were that appellant did not "aver that the act of the trustee or an order of the referee in terms confirmed the sale of the assignee to be operative retroactively as a sale by the trustee, nor as a sale free from the lien," or that the "order of the referee or the act of the trustee was intended to have such effect or was in such terms that it could by any interpretation be held so operative." The amended plea alleged that the referee was informed as to the conditions of the sale and that appellant had purchased the goods free from liens, whereupon the referee ordered the trustee to confirm the sale as made by the assignee to the appellant, and the trustee did thereafter confirm the sale, and that the money paid to the assignee by appellant had been turned into the bankruptcy court.

It is contended by appellant that this plea stated facts sufficient to constitute a bar to the action. In the former decision in this case, the court held that the lien of appellees for rent attached on the date of the lease, January, 1907, about one year before the institution of this suit. The lien having attached more than four months prior to the adjudication in bankruptcy, under the law it might be prosecuted in the district court regardless of the bankruptcy proceedings. The plea in abatement fails to show that the bankruptcy court ever had possession of the stock of goods in question, and, we think, for that reason, that the confirmation by the trustee

pleaded did not show jurisdiction of the subject matter in the bankruptcy court. "The mortgage lien of Hofer was obtained long prior to a period of four months next preceding the date of filing the petition in bankruptcy against Rohrer; and while the suit was commenced and the decree of foreclosure rendered within that period, neither the mortgage lien nor the judgment lien is denounced by any provision of the bankruptcy statute." *In re Rohrer*, 177 Fed. 381, 383, 100 C. C. A. 613, 615. "The proceeding which the order in question restrained the marble company from further prosecuting had been instituted in a court of Pennsylvania prior to the filing of the petition in bankruptcy. It was a hostile proceeding, and it attached a fund which the marble company claimed by adverse right. 'The state court had jurisdiction over the parties and the subject matter, and possession of the property; and it is well settled that, where property is in the actual possession of the court, this draws to it the right to decide upon conflicting claims to its ultimate possession and control.' *Metcalf* v. *Barker*, 187 U. S. 175, 47 L. Ed. 122, 23 Sup. Ct. Rep. 71. The state court had acquired jurisdiction of the *res*, and was fully empowered to pass upon any and all conflicting claims to it." *Tennessee Producer Marble Co.* v. *Grant et al.*, 135 Fed. 323, 67 C. C. A. 677.

It is contended by appellant that the district court did not at any time get this stock of goods into its possession; but we are of the opinion that, when the appellees instituted their suit to have a lien declared and procured an injunction against its disposition, it had taken such possession as is contemplated by law to confer jurisdiction. "A statutory lien implies security upon the thing before the warrant to seize it is levied. It ties itself to the property from the time it attaches to it, and the levy and sale of the property are only means of enforcing it. In other words, if the lien is given by statute, proceedings are not necessary to fix the *status* of the property." *Morgan* v. *Campbell*, 22 Wall. 390, 22 L. Ed. 796.

We conclude that the demurrer to the plea in abatement was properly sustained.

2. The defendant Joseph Brown was not served with process and did not make any appearance. The appellant for this reason moved the dismissal of the action, contending that

Brown was an indispensable party at the time the action was brought and that the trustee in bankruptcy became so after the estate of Brown passed into the hands of the bankruptcy court.

Brown assigned the stock of goods to Sims for the benefit of his creditors on January 2d, and Sims sold the stock and gave possession of it to appellant on January 8, 1908. Brown, as owner, and Sims, as assignee, had before March 20th, when Brown was adjudged a bankrupt, parted with all their interest in the stock of goods. No personal judgment was sought against Brown. We do not believe Brown was an indispensable party; he could not have been interested in any other sense than to know that his effects were properly applied to the payment of his liabilities, secured and unsecured, and that this would be done might be safely left to the courts that had taken jurisdiction of his estate. Brown, having parted with his interest in the subject matter of the controversy, was not a necessary party. *Marsh* v. *Green,* 79 Ill. 387; *Lockwood* v. *White,* 65 Vt. 466, 26 Atl. 639; *Van Keuren* v. *McLaughlin,* 21 N. J. Eq. 165.

3. The trial court, following the decision of the territorial supreme court (*Murphey* v. *Brown,* 12 Ariz. 268, 100 Pac. 801), permitted the appellee, over objection, to introduce in evidence the unrecorded and unacknowledged lease from appellee to Brown, upon the theory, as we understand it, that the lease was a valid and binding contract as between the parties to it. This is assigned as error by appellant, but we are precluded from questioning the correctness of the law of the former decision. Appellee admitted that appellant had no knowledge, actual or constructive, of the existence of the lease, and its only province, as we take it, was to fix the term of lease and the amount of rent lienable against the stock of merchandise, in the event that appellant had notice of the existence of the relation of landlord and tenant between Murphey and Brown at the time of his purchase of the stock of merchandise. The lease was properly admitted for that purpose.

4. In the former decision the court announced this as the law: ''That if Friedman purchased the stock without notice of Murphey's equities, he has obtained the stock free from Murphy's claim; that if Friedman purchased the stock with

notice of Murphy's equities, Murphy is entitled to enforce as against Friedman his equitable right to a lien."

Appellees assert with confident reliance that in law appellant did have notice of a lease, for the reason that appellant knew of the relation of landlord and tenant between Murphey and Brown at the time of his purchase. It is a fact that appellant admitted in his answer that, at the time of the sale to him of the stock of merchandise, the assignee informed him the premises were rented, and appellant paid $70 on January, 1908, rent. He was also told by assignee that he would have to make his own arrangements with the owner as to the future occupancy of the building. With the information in his possession that he was purchasing a stock of merchandise occupying a rented building, may he rely upon the statements of the tenant as to the terms of the tenancy, or was it his duty to make inquiries of the landlord? So far as our investigation goes, we are convinced the law is that one dealing with a tenant, knowing him to be such, is presumed to know the terms of the tenancy, and in case he acts upon information obtained from the tenant he does so at his hazard. In other words, knowing there is a tenancy, he is conclusively presumed to know the rights of the landlord. Of course, the landlord might lose his rights by his representations or silence when he should speak; but that element is not in this case, for no inquiry was made of the landlord. We quote, as expressing our views of the law, the case of *Lehman* v. *Stone,* 4 Will. Civ. Cas. Ct. App., sec. 121, p. 182, at page 183, 16 S. W. 784: "It is claimed by appellant that she is a purchaser of said property in good faith, for a valuable consideration, without notice of appellee's lien thereon for rent. Concede that she purchased in good faith, and paid a valuable and full consideration for said property, and had no actual notice of appellee's lien for rent, still, under the law, she took the property subject to appellee's lien. She had constructive notice of said lien at the time she purchased because of the fact that said property was upon the rented premises." Also, *Weil* v. *McWhorter,* 94 Ala. 543, 10 South. 132: "And we cannot doubt that, ordinarily, one who purchases from a tenant of a building property to which the landlord's lien has attached, with knowledge of the existence of the tenancy, takes it subject to the lien. Notice of the tenancy is suffi-

cient to put him on inquiry as to whether any rent has accrued, and where his inquiry, if properly prosecuted, and information sought of the landlord, would disclose that rent had accrued, whether due or not, the purchaser is held to know the fact. To make inquiry of the tenant will not suffice.'' To the same effect are the following cases: *Reinhardt* v. *Blanchard,* 78 Ill. App. 26; *Smith* v. *Meyer,* 25 Ark. 609; *Harvey* v. *Hampton,* 108 Ill. App. 501; *Stadel* v. *Aikins,* 65 Kan. 82, 68 Pac. 1088.

The appellant has made many assignments of error upon the rejection by the court of his offer to prove by himself and other witnesses that he sought advice and information of members of the bar as to the *status* of the stock of merchandise in the hands of the assignee, and as to whether the assignee could sell the same free from liens. In the view we take of the case, it was not error to exclude this offer. Appellant's plain duty was to make inquiry of the landlord, and that he did not do. He is presumed to know what that inquiry would have disclosed.

The judgment of the lower court is affirmed.

FRANKLIN, C. J., and DUFFY, J., concur.

CUNNINGHAM, J., being disqualified and announcing his disqualification in open court, the remaining Judges, under section 3 of article 6 of the constitution, called in Hon. F. J. DUFFY, Judge of the superior court of the state of Arizona, in and for the county of Santa Cruz, to sit with them in the hearing of this case.

---

NOTE.—As to what judgments are *res judicata,* see notes in 8 Am. St. Rep. 229; 14 Am. St. Rep. 250; 37 Am. St. Rep. 29; 49 Am. St. Rep. 831.

As to landlord's lien for rent, see note in 119 Am. St. Rep. 122.